282 So.2d 748 (1973)
Aubrey NINI and Katherine Nini
v.
VOLUME MERCHANDISE, INC. and Reliance Insurance Company.
No. 9459.
Court of Appeal of Louisiana, First Circuit.
August 22, 1973.
John E. Conery, Franklin, for appellants.
Nathan T. Gisclair, Jr., New Orleans, for appellees.
Before LANDRY, TUCKER and PICKETT, JJ.
PICKETT, Judge.
The plaintiff, Katherine Nini, filed this suit against her former employer, Volume Merchandise, Inc., and it's insurer, Reliance Insurance Company, for workmen's compensation benefits for total and permanent disabilities, alleged to have resulted from an accident which occurred on April 15, 1970, in the course and scope of her employment by defendant. Aubrey Nini, the husband of Katherine Nini, joined his wife in this action to recover medical expenses past, present and future, incurred for his wife.
From an adverse judgment, the plaintiffs have appealed.
After this appeal was lodged in this court, the appellants filed an alternative motion to remand and attached thereto the affidavit of Dr. Robert Blereau, disclosing that Mrs. Nini had been under his care since April 15, 1970, for severe injuries she sustained to her neck and shoulder area on said date; and that on February 13, 1973, an anterior cervical fusion was performed at the C-5-6 level by Dr. John D. Jackson, neurosurgeon. A letter dated February 13, 1973, from Dr. Jackson is attached *749 to plaintiffs' motion to remand, states:
"This patient has been having left shoulder and left upper extremity pain for some time with pain that radiates into the thumb of the left hand. She has had a history in the past of having 3 cardiac arrests, but it was felt that with the present day anesthesia, she should not have any difficulty from this. She had previously had a cervical diskogram which proved that her pain was coming from the C-5-6 disc, consequently she was admitted for an anterior cervical fusion, which was performed at C-5-6 on 2/13/73. She had an uneventful post-operative course and was able to go home on 2/21/73. She did have a small amount of drainage from the left ileal wound, which was felt to be serosanguineous fluid and was not of any consequence. She is being discharged on Darvon N for pain, Theragan, 1 b.i.d. and Sodium Seconal, grains 1½ which is for sleep, and Keflex, 500 mg. q. 6 hours for 5 days. She will return to see me in a month from now and at that time I am quite hopeful that she will be completely asymptomatic."
The affidavit of Dr. Blereau attached to plaintiffs' motion to remand declares that the treatment provided to Mrs. Nini was necessitated by her accident of April 15, 1970, and that Mrs. Nini remains under the care of Dr. Blereau. As authority for the remand, the appellants cite: LSA-C.C.P. Article 2164; Robinson v. Fidelity Casualty Company of New York, La.App., 181 So.2d 318; Lacy v. Employers Mutual & Liability Insurance Company, 233 La. 712, 98 So.2d 162; Guillory v. Employers Mutual & Liability Insurance Co., La.App., 121 So.2d 273, and Hoffpauir v. Hardware Mutual Casualty Co., La.App., 192 So.2d 588.
The motion to remand was heard at the same time as the appeal on the merits. The appellees vigorously oppose the motion to remand. They point out that the operation performed by Dr. Jackson was almost three years after the accident, and nearly two years after the trial. The appellees contend that the medical evidence submitted at the trial was complete. The condition of Mrs. Nini at the time of the trial was the subject of five specialists' examinations. They contend that the evidence the appellants propose to submit will be merely cumulative.
At the trial of this case there were certain admissions of fact which the trial court summarized, as follows:
"At the trial of this matter the defendants admitted that the plaintiff, Mrs. Nini, was in fact employed by defendant, Volume Merchandise Inc., on April 15, 1970; that on said date there was in effect a standard workmens compensation liability policy issued in favor of Volume by Reliance Insurance Company; that on said date plaintiff did sustain an accidental injury in the course and scope of her employment; that she was paid workmen's compensation at the rate of $49.00 per week for a period of thirtythree weeks terminating January 5, 1971; and, that all medical expenses incurred by Mrs. Nini were paid to date excepting that incurred to Dr. R. C. Llewelyn for examination and myelographic study, which latter expense defendants contend was not incurred in the treatment of plaintiff but rather for trial purposes and is therefore not recoverable."
The facts show that on April 15, 1970, the plaintiff, Mrs. Katherine Nini, was working for defendant, Volume Merchandise, Inc., hereinafter referred to as Volume. Mrs. Nini was injured when she fell from a ladder while trying to remove some boxes of merchandise from a shelf about eight feet high. She testified that as she lifted a box from the shelf the ladder began shaking and she fell and was rendered unconscious. When she regained consciousness, her head and shoulders were resting on a shelf about four inches off the floor, and the rest of her body was on the *750 concrete floor. When she attempted to move her arms, she could not do so, and blacked out again.
The evidence shows that immediately following the accident, Mrs. Nini was taken to the Lakewood Hospital in Morgan City, where she was seen and treated by Dr. Robert Blereau, a general practitioner. Dr. Blereau diagnosed Mrs. Nini's injuries as a cerebral concussion, and contusions of the lower skull, neck and upper back. She was hospitalized from April 15, 1970 until April 24, 1970. Upon Mrs. Nini's release from the hospital, Dr. Blereau prescribed heating pads to her back, rest, and pain pills. She was advised to return for follow-up treatment. Dr. Blereau continued to treat Mrs. Nini, intermittently, after her release from the hospital to the time of the trial date of this case. Dr. Blereau said he has seen Mrs. Nini three times, and received numerous telephone calls from her, since January, 1971; and that he made physical examinations on two of these visits. He admitted that found no objective symptoms to support her complaints of pain. But that he prescribed heat treatments and sedatives because of her complaints of pain. Because of Mrs. Nini's complaints of pain in the shoulder area, during the period from May of 1970 to October of 1970, she was referred, either by Dr. Blereau or her attorneys, to several medical specialists for examination, consultation and/or evaluation. During that period Mrs. Nini saw Dr. George R. Cary, an orthopedic specialist; Dr. George D. Battalora, Jr., an orthopedist; and Dr. Carl F. Culicchia, a neurosurgeon.
Dr. George R. Cary examined plaintiff on May 20, 1970, and on July 8, 1970. His first examination disclosed no objective evidence of orthopedic pathology in either the cervical or thoracic spine. He found an area of localized tenderness in the left trapezial and rhomboid areas, but no evidence of objective pathology in that area. He suggested certain exercises to plaintiff to relieve the soreness. As a result of that examination, he expressed the opinion that Mrs. Nini should be able to return to work activity within two or three weeks. On the occasion of his second examination, the plaintiff complained of a stocking type numbness in her left arm and a subjective sensation of weakness in her left arm; but it was his opinion that there were no objective findings to support her complaints. He did say that a stocking-type anesthesia or numbness implies a hysteria, or that type of reaction. Dr. Cary advised plaintiff to talk to her doctor about a trial cervical traction, but did so only because of Mrs. Nini's continued complaints of pain.
Dr. George C. Battalora, Jr., a specialist in orthopedic surgery, examined the plaintiff on July 24, 1970, at the request of her attorney. She complained of soreness in her neck and back of her shoulders. However, Dr. Battalora said he found no objective pathology to justify her complaints. The plaintiff complained of diffuse tenderness with palpation about the left shoulder girdle and the entire left arm to the elbow. Dr. Battalora said that her complaints would not coincide with any known anatomical nerve distribution.
Dr. Carl F. Culicchia, a neurosurgeon, examined the plaintiff on July 28, 1970, on referral from Dr. Blereau. After a thorough and extensive examination of the plaintiff, Dr. Culicchia testified that he did not find any neurological abnormality. He states the plaintiff's complaints of pain suggested that nerve roots in the cervical area could be affected. Because of the possibility of a cervical radiculopathy, he suggested that Mrs. Nini employ cervical traction at home. He instructed her how to apply the cervical traction. On October 18, 1970, the plaintiff was seen again in Dr. Culicchia's office, at which time she stated that she had undergone traction for two weeks without improvement. She, then, was hospitalized and placed in cervical traction for two weeks, but without improvement; and she continued to complain *751 of pain in the cervical region and the upper extremities. He testified that his examinations disclosed no objective evidence of disability that would support the plaintiff's complaints of pain.
Dr. Raeburn C. Llewellyn, a neurosurgeon, saw and examined Mrs. Nini on April 19, 1971. He was of the opinion that the plaintiff's pain was due to a disabling neurological defect, or possibly an orthopedic defect. He directed a myelogram to be made. Based on his examination of the plaintiff, and the history related to him by Mrs. Nini, and his study of the myelogram, Dr. Llewellyn diagnosed Mrs. Nini's problem as an unresolved cervical disc injury. Moreover, Dr. Llewellyn testified on several occasions that his interpretation of the myelogram, coupled with his physical examination and plaintiff's narrated history, indicated nerve root distortion at the C-5-C-6 level, which is the exact site of the recently performed surgery.
Mrs. Nini admitted that she was involved in an automobile accident in 1967, at which time she sustained a mild whiplash injury. However, she testified that she had fully recovered from that injury prior to April 15, 1970. The lay evidence supports her continuous complaints of pain. The record discloses that Mrs. Nini consistently sought medical advice and treatment for pain in her neck, shoulders and upper extremities. The record shows that as a result of his study of the myelogram, Dr. Llewellyn said: "I felt from the AP view there were findings again indicative of nerve root distortion at the C5-C6 level." The affidavit of Dr. Blereau and the statement of Dr. Jackson attached to appellants' motion to remand show that a cervical fusion was performed at the C5-C6 level, which tends to support the correctness of Dr. Llewellyn's diagnosis. Furthermore, a careful examination of the expert medical evidence shows that the other medical experts did not say Mrs. Nini did not have a cervical disc involvement; but their testimony is to the effect that they did not find objective evidence of such involvement.
LSA-C.C.P. Article 2164, provides:
"The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable."
In Robinson v. Fidelity & Casualty Company of New York, La.App., 181 So.2d 318, the court remanded the case for further proceedings, and in that connection said:
"A remand may nevertheless be ordered to prevent a truly disabled workman from receiving compensation to which he may be entitled, in view of the paternalistic aims of the workmen's compensation statute. Unlike an employer who can reopen an adverse award six months later, a disabled claimant to whom compensation is awarded for less than six months may forever lose his right to further compensation even though subsequent evidence might indicate that the work-caused disability truly persisted for longer, see Lacy v. Employers Mutual Liability Insurance Co., 233 La. 712, 98 So.2d 162, Guillory v. Employers Mutual Liability Insurance Co., La.App., 121 So.2d 273, 19 La.L.Rev. 345-346 (1959)."
In the case of Jamison v. Reese Variety Store, Inc., La.App., 181 So.2d 464, Dr. Edwin C. Simonton, Jr., an orthopedist, discharged the plaintiff on April 26, 1963, as being without residual disability. On August 25, 1965, Dr. Ray E. King, an orthopedic surgeon, found it necessary to perform a laminectomy and remove a ruptured fourth lumbar disc from the L-4-5 interspace on the right side. This fact was made known to the court in a motion to remand by a statement from Dr. King attached to said motion. The court remanded *752 the case and in its reasons for remanding the case, said:
"It may well be conceded that there is much evidence to sustain the findings of the trial court and we are not at all certain that plaintiff in future proceedings will be able to show connexity between the injury of December 20, 1961 and the findings of Dr. King on August 25, 1965 as a result of his operation. However, in the interest of justice, we are inclined to give plaintiff another opportunity to present any evidence which may connect her employment injury with the ruptured fourth lumbar disc removed by Dr. King. Ample authority for this action is to be found in the above cited authorities."
The plaintiff may not be able to show any connection between the injury sustained by her on April 15, 1970, and the findings of Dr. Jackson on February 13, 1973, when he performed the cervical fusion for plaintiff. But we believe it would be unwise for this court to refuse to permit the plaintiff the opportunity to show that she sustained a ruptured intervertebral disc in her work connected accident on April 15, 1970. Ample authority for this action is found in the above cited authorities.
The defendants have not appealed and they have not answered the appeal. Therefore the award to plaintiffs of the sum of $562.15 for medical expenses is affirmed.
For the above and foregoing reasons, we affirm the trial court's award in favor of the plaintiffs, Aubrey Nini and Katherine Nini, in the sum of $562.15, together with legal interest thereon from judicial demand until paid; otherwise the judgment from which plaintiffs have appealed is annulled and set aside. This case is remanded for further proceedings not inconsistent with the views herein expressed, but restricted, however, to the introduction of relevant medical evidence presented by either side disclosing the connection, if any, between the employment accident and the herniated cervical disc removed by Dr. Jackson on February 13, 1973.
All costs incurred in this appeal should await the outcome of the case.
Affirmed in part; reversed and remanded in part.