|,KLINE, J.
This is a suit for recovery of workers’ compensation benefits filed by plaintiff, Brett Barnhill. After a trial on the merits, the workers’ compensation judge dismissed plaintiffs claims with prejudice. Plaintiff took this devolutive appeal.
FACTS AND PROCEDURAL HISTORY
Plaintiff was injured on January 4, 2000, while working for defendant, A-l Remodeling (A-l). On that day, plaintiff fell approximately ten feet from a roof onto landscape timbers. As a result of that accident, plaintiff sustained a fractured wrist and fractured ribs, and allegedly sustained neck, shoulder and back injuries. Plaintiff was subsequently paid workers’ compensation benefits, including wages and medical benefits, until July 1, 2000. At that time, A-l suspected that plaintiff was working in Mississippi and suspended his benefits pending an investigation.
On August 8, 2000, plaintiff filed a disputed claim for compensation, requesting wage benefits from July 1, 2000, and medical treatment, including a bone scan and MRI.[2] Made defendants were A-l and, by amended petition, Louisiana Homebuilders Self Insurance Fund, the workers’ compensation insurer for A-l. The investigation did not show that plaintiff was working in Mississippi, so his benefits were reinstated on July 19, 2000. On August 9, 2000, Barbara Heath, the claims adjuster assigned to this case, issued a check to plaintiff paying him for the period of July 19 through August 6, 2000. Also, at that point, plaintiff was put back on the repetitive payment schedule for benefits. On November 15, 2000, plaintiffs deposition *663 was taken. During that deposition, plaintiff testified that he had not suffered any previous neck, back or shoulder injuries. On December 10, 2000, A-l received a report from Dr. Morgan indicating that plaintiff was at maximum medical improvement and was able to return to work. In addition, upon receiving that report, A-l discovered that plaintiff had suffered injuries to his neck and back prior to his accident while working for A-l. Accordingly, A-l discontinued plaintiffs benefits and also |,-¡alleged that he had misrepresented his injuries to A-l. A-l also filed a recon-ventional demand requesting that plaintiff, pursuant to La. R.S. 23:1208, be required to forfeit all benefits and make restitution to A-l for all investigative, medical and legal costs. A trial on the matter was held on August 6, 2001. The trial court rendered judgment dismissing plaintiffs claims and denying A-l’s claims. Plaintiff took this devolutive appeal.[3]
THE EVIDENCE
Work related injury
During plaintiffs deposition, he testified that he had been having problems with his shoulder and neck ever since the accident and that when he initially went to the emergency room he complained about those areas. The medical records from the emergency room did not reflect that he initially complained of the shoulder and neck area. However, at trial, contrary to the deposition, plaintiff testified that he must have misunderstood the question during his deposition because at the time of the emergency room visit he did not have any neck or shoulder pains. At the time of his deposition, however, plaintiff testified that his current pain included pain in his shoulder, neck and pain between his shoulder blades.
Dr. Deryk Jones is the doctor who initially treated plaintiff. He first treated plaintiff on February 7, 2000. He testified during his deposition that plaintiff was complaining primarily of left wrist and rib area pain at that time. At that time, Dr. Jones immobilized plaintiffs arm with a cast, so the wrist could heal. On February 28, 2000, plaintiff reported some burning in his ribcage to Dr. Jones, but still did not complain about his shoulder, neck or back. On May 25, 2000, plaintiff began to complain to Dr. Jones about pain in the rib area and upper back. Dr. Jones thought it might be paraseapular bursitis, which sometimes can set in after trauma to and immobilization of an area. At that time, he still found plaintiff to be disabled from working, primarily due to his back pain. During | ¿plaintiffs June 30, 2000 visit to Dr. Jones, he indicated that he had pain in the left paraseapular region with any attempt at overhead use of the left arm. Dr. Jones indicated that plaintiff had significant tenderness with palpation along the left paraseapular region. There was also some crepitus (creaking sound) in the left shoulder with motion of the shoulder, but it did not appear to be in the parasca-pular bursal region. His assessment was that plaintiff demonstrated some left shoulder anterior rhomboid muscle weakness with associated tenderness along the paraseapular bursal region. On plaintiffs July 19, 2000 visit, Dr. Jones did not find any significant limitation in range of motion regarding plaintiffs neck or shoulder. However, he indicated that plaintiff had *664 continued tenderness with palpation in the midline at the T6 through T8 levels and had some tenderness along the parascapu-lar area. He indicated that plaintiff had not resolved with conservative measures such as injection into the left parascapular bursal region. At that time plaintiff was set up for a bone scan. On August 7, 2000, Dr. Jones indicated that the bone scan revealed increased uptake along the left rib cage consistent with his prior rib injuries and that plaintiff had what appeared to be parascapular muscle problems. As of September 9, 2000, Dr. Jones indicated plaintiff still had irritation along the thoracic spine but indicated there was no significant pain at that time with palpation along the scapular border. Dr. Jones subsequently set plaintiff up for a cervical MRI to assess for signs of disc herniation and nerve root impingements. The MRI was not approved.
Dr. Joe Morgan first treated plaintiff on November 17, 2000. Plaintiff told him he had injured his neck and shoulders at the time of the A-l accident. Plaintiff indicated the area between the shoulder blades was the area that was painful. However, Dr. Morgan testified that plaintiff presented with no signs of abnormalities whatsoever and found there was no objective medical evidence based on his physical examination that justified plaintiffs pain complaints. At that time plaintiff indicated that the most significant pain was between his shoulder blades. Upon physical examination, Dr. Morgan found no crepitus in the left shoulder. However, Dr. Morgan’s medical report from November 17, 2000, | Rstates that there was some “left shoulder serratus anterior rhomboid muscle weakness with associated tenderness in the parascapular bursal region.” This is the same region indicated by Dr. Jones. Dr. Morgan stated he wouldn’t object to a cervical MRI but did not feel it was necessary. Dr. Morgan asserted that there was no objective medical evidence to corroborate any continued disability involving plaintiff.
Medical records from the Gulf Coast Pain Institute indicated that plaintiff had full range of motion of the shoulder but with slow movements at extremes.
The trial court found that plaintiff “failed to establish by clear and convincing evidence a causal [connexity] between the alleged accident and any subsequent disabling condition” and that the “weight of objective medical evidence does not support the Plaintiffs medical complaints.”
The trial court did not give other reasons for judgment. The testimony and medical records show that, prior to the A-1 accident, plaintiff suffered injuries to some of the areas of which he complained after the A-l accident. However, the hospital medical records regarding plaintiffs injuries sustained in a 1998 automobile accident showed plaintiff complained of right upper quadrant pain and nausea and right upper quadrant tenderness, although he also complained of neck pain as he did after the A-l accident. The evidence also showed that plaintiff had suffered a previous work injury in June of 1999. Medical records from Washington-St. Tammany Hospital, where plaintiff was treated for that injury, showed he complained of neck pains and had mild tenderness in the neck. However, Dr. Jones testified that he did not know if plaintiff had a recurrence of those symptoms because “what they’re describing there is more of a muscle strain, some mild tenderness at the base of his neck, but not particularly where we’re pointing to on this injury here.” He testified that it “wasn’t the same area.”
Nonetheless, the workers’ compensation judge found no connexity between plaintiffs injury with A-l and his subsequent complaints of pain and alleged disability.
*665 As a basis for his appeal, plaintiff asserts the workers’ compensation judge erred in determining there was no con-nexity between plaintiffs accident with A-l and his subsequent disability. Plaintiff also asserts the workers’ compensation judge erred in finding that the medical evidence did not support | (¡plaintiffs medical complaints and in not imposing sanctions against defendant and defense counsel for their “frivolous litigation and unethical conduct” in this matter.
In an answer to plaintiffs appeal, A-l asserted the workers’ compensation judge erred in failing to find that plaintiff violated the provisions of La. R.S. 23:1208, thus, forfeiting his entitlement to benefits and allowing for reimbursement to A-l.
Because of our ruling on the motion to remand, we pretermit discussion of the workers’ compensation judge’s 1208 ruling and failure to impose the sanctions requested by plaintiff.[4]
AUTHORITY TO REMAND
A devolutive appeal was granted on October 25, 2001. On April 17, 2002, plaintiff filed his appellant brief with this court. Subsequently, a motion to remand was filed by plaintiff on December 18, 2002. This motion alleges that plaintiffs medical condition has been clarified as a result of a shoulder surgery obtained subsequent to the judgment of the workers’ compensation judge. The motion alleges that this surgery and the associated findings show that plaintiffs disability and surgery are directly related to the work injury.
Pursuant to La. C.C.P. art. 2164, courts of appeal have the power to remand a case for the introduction of additional evidence if grave injustice might result from failure to do so. Our Lady of the Lake Hosp. Inc. v. Carboline Co., 632 So.2d 339, 343 (La.App. 1 Cir. 12/29/93), writs denied, 94-0287 (La.3/25/94), 635 So.2d 228 and 94-0753 (La.5/6/94), 637 So.2d 1052. Such a remand is warranted only when the new evidence is likely to affect the outcome of the case. Id. The power to remand on this basis should be exercised sparingly. MMR-Radon Constructors, Inc. v. Continental Ins. Co., 1997-0159, p. 5 (La.App. 1 Cir. 3/3/98), 714 So.2d 1, 4, writ denied, 1998-1485 (La.9/4/98), 7721 So.2d 915. Whether a particular case is remanded is a matter over which the court has much discretion and is governed by the particular facts and circumstances in each case. Batiste v. Our Lady of the Lake Regional Med. Ctr., 550 So.2d 1338, 1344 (La.App. 1 Cir.1989), judgment vacated, 558 So.2d 1136 (La.1990)(the Louisiana Supreme Court vacated the judgment of this court and remanded the case to the trial court for the introduction of additional evidence).
The evidence obtained subsequent to the trial shows that a cervical MRI was conducted and showed plaintiff had a “left paracentral disc protrusion and associated osteophyte at C4-5” and “small left para-central disc protrusion at C6-7, and small anterior osteophyte at C5.” This evidence also shows an MRI of the left shoulder was conducted on June 14, 2002. That MRI showed there were several irregularities that indicated the presence of a labral tear. Furthermore, on April 25, 2002, Dr. Me-toyer, who had treated plaintiff approximately a year and a half before and had ordered an MRI that was denied, found, as a result of the MRI, that plaintiff had two disc protrusions and believed this was all secondary to his accident on January 4, *666 2000. He stated that he had requested MRI’s in the past that were not approved and that he thinks “it is pretty obvious that this is the result of [plaintiffs] injury in January of 2000.” He also found there was tenderness over the posterior and anterior surface of the neck. Thus, plaintiff was treated with injections at the C-4/5 and C-5/6 levels. On June 21, 2002, Dr. Metoyer stated that Mr. Barnhill has cervical disc disease at C-4/5 and C-5/6. He indicated plaintiff continued to have shoulder pain and on July 16, 2002, Dr. Hontas performed shoulder surgery on plaintiff. That surgery revealed that plaintiff had a complete tear of the glenoid labrum. Allegedly, plaintiffs shoulder pain greatly decreased after surgery.
In Nini v. Volume Merchandise, Inc., 282 So.2d 748 (La.App. 1 Cir.1973), the plaintiff, who was seeking workers’ compensation benefits, filed a motion to remand with this court while the matter was on appeal. Subsequent to the trial court’s judgment, the plaintiff had undergone surgery. The doctor performing the surgery attached an affidavit to the motion to remand that stated |sthe plaintiffs surgery was necessitated by the work related accident at issue in that case. In Nini, this court stated:
The plaintiff may not be able to show any connection between the injury sustained by her ... and the findings of Dr. Jackson ... when he performed the cervical fusion for plaintiff. But we believe it would be unwise for this court to refuse to permit the plaintiff the opportunity to show that she sustained a ruptured intervertebral disc in her work connected accident on April 15, 1970.
Nini, 282 So.2d at 752. In addition, in Batiste, 550 So.2d at 1344 this court stated:
There is authority in the jurisprudence for granting a remand for a new trial in a worker’s compensation case where an employee has surgery subsequent to a trial and that surgery could have relevance to the issue of whether or not the employee’s injury is compen-sable. See Crimen v. Fidelity and Casualty Company of New York, 249 La. 1071, 193 So.2d 249 (1966).
We believe the subsequent medical examinations and surgery obtained after the date of judgment in the instant case could show a connexity between plaintiffs work related accident with A-l and the injuries of which he complained. Recall that the accident involved a ten foot fall and landing on timbers.
There is a paternalistic rule in workers’ compensation cases that allows a court of appeal to remand a case for the introduction of further evidence if there is a showing by medical reports or otherwise that reasonably indicates a continued or recurrent work related disability persisting beyond the date to which the trial court’s original judgment allowed compensation. See Gary v. H.B. Zachry Co. Inc., 93-581, p. 10 (La.App. 3 Cir. 2/2/94), 631 So.2d 671, 676, unit denied, 94-0540 (La.4/22/94), 637 So.2d 159. The purpose of this rule is to prevent a truly injured workman from forever losing his day in court. Id. We believe that principle is applicable to a case such as this in which subsequent evidence may show that a plaintiff does in fact suffer from a work related injury.
Therefore, in view of the paternalistic aims of the workers’ compensation statutes and to prevent plaintiff from forever losing his day in court, the judgment from which plaintiff has appealed is annulled and set aside; this case is remanded for further proceedings for the introduction of additional evidence. Thereafter, all of such evidence, together with that in the record as presently made up, shall be considered *667 by the workers compensation judge in 1 ^redetermining the connexity between plaintiffs injuries and the January 4, 2000 accident. In addition, on remand additional credibility determinations may be made under La. R.S. 28:1208. See Crimen v. Fidelity and Casualty Co. of New York, 249 La. 1071, 193 So.2d 249 (La.1966); Nini, 282 So.2d 748; McMurray v. United States Fidelity and Guaranty Co., 99 So.2d 473 (La.App. 2 Cir.1957).[5]
DECREE
The judgment of the trial court is vacated and set aside. This case is remanded for further proceedings in accordance with the views expressed herein. All costs incurred in this appeal shall be deferred until the outcome of this case.
REMANDED.
McCLENDON, J., concurs with reasons.

. Plaintiff also sought penalties and attorney fees.

. A-l filed a an answer to the appeal of plaintiff. In addition, upon consideration of plaintiff's ex parte motion to remand, this court remanded for the introduction of additional evidence. The defendant opposed that motion and filed writs with the Louisiana Supreme Court. The Supreme Court, on March 28, 2003, granted that writ and remanded to this court for consideration of the motion by a three-judge panel.

. Since we shall remand the case for the introduction of evidence on the causation issue, which may involve credibility determinations, the trial judge may redetermine the forfeiture issue.

. A-l's motion to strike the exhibits attached to plaintiff's motion to remand is hereby denied. In the interest of justice, the courts have considered such exhibits. See the cases cited herein. We do not determine that those exhibits show any connexity whatsoever between plaintiffs injury and his accident on January 4, 2000, while working for A-l.