528 So.2d 770 (1988)
Albert Esaw FORD, Jr., Plaintiff-Appellant,
v.
The HARTFORD INSURANCE COMPANY, et al., Defendants-Appellees.
No. 87-580.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
*771 Brown & Laing, Donald R. Brown, Alexandria, for plaintiff-appellant.
Gist, Methvin, Hughes & Munsterman, David A. Hughes, Alexandria, for defendants-appellees.
Before DOMENGEAUX, STOKER and KING, JJ.
KING, Judge.
The issues presented by this appeal are whether or not the trial court was manifestly in error in denying plaintiff temporary total worker's compensation benefits, or, in the alternative, supplemental earnings benefits, in failing to award plaintiff penalties and attorney's fees, and in not granting plaintiff a new trial.
Albert Esaw Ford, Jr. (hereinafter plaintiff) filed suit against his former employer, Justiss Oil Company, and its worker's compensation insurer, the Hartford Insurance Company (hereinafter sometimes referred to as defendants), seeking to have worker's compensation benefits reinstated, to the extent of the length of his disability, and payment of all related hospital, medical, and drug expenses. Additionally, plaintiff requested statutory penalties and attorney's fees. Plaintiff injured his back on November 8, 1984, while in the course and scope of his employment with defendant, Justiss Oil Company, and surgery was performed to remove a protruding disc of the L5-S1 interspace. Defendants paid worker's compensation benefits and all related medical expenses until plaintiff was discharged to return to light duty. Plaintiff subsequently returned to work and was involved in another accident on February 21, 1986, while in the course and scope of his employment with another employer, Jerry Richardson Trucking. Defendants' failure to reinstate benefits, after a second protruding disc was discovered on March 11, 1986, resulted in the initiation of this suit.
After a trial on the merits, the trial court denied plaintiff temporary total benefits, finding that plaintiff failed to prove by a preponderance of the evidence that his injury was causally related to his initial accident with Justiss Oil Company. The trial court determined plaintiff was entitled to supplemental earning benefits at the rate of $34.61 per week from October 25, 1985 until January 1, 1986, when plaintiff began work as a log truck driver for Richardson. Additional compensation benefits, claimed for the period beginning January 1, 1986, and medical benefits, claimed for the period beginning October 25, 1985, were denied. The claim for penalties and attorney's fees was also denied.
Plaintiff then timely filed a motion for new trial based upon an updated medical evaluation which causally related the second *772 protruding disc to plaintiff's first accident. The trial court denied plaintiff's request for a new trial and plaintiff appeals the judgment and denial of his motion for a new trial. We reverse the judgment of the trial court and remand the matter for further proceedings.

FACTS
The facts giving rise to this litigation were thoroughly and succinctly set forth by the trial judge in his written reasons for judgment, dated January 21, 1987, which we adopt as follows:
"The Plaintiff, ALBERT ESAW FORD, JR., seeks worker's compensation benefits from his employer, JUSTISS OIL COMPANY, INC., and its insurer, THE HARTFORD INSURANCE COMPANY, for an accident which occurred on November 8, 1984. After trial of the matter, the record was left open for the filing of certain medical depositions. The record was completed and finally submitted to the Court on December 8, 1986.
The accident occurred on November 8, 1984. PLAINTIFF, while in the course and scope of his employment, fell from the pipe rack of a drilling rig. In doing so, he struck the catwalk and ultimately fell to the ground. He immediately suffered pain in his right hand and right ribcage. The accident was reported to his immediate supervisor and PLAINTIFF was relieved from any additional work activities.
PLAINTIFF received various medical treatment and ultimately had low back surgery performed by Dr. Don W. Irby of Monroe, Louisiana. The accident itself is not contested and certain compensation benefits have previously been paid. The question before the Court is the extent of recovery of the PLAINTIFF.
The first medical treatment received by the PLAINTIFF was from Dr. Kenneth P. Mauterer, Jr., a general practioner [sic] in Urania, Louisiana. Dr. Mauterer saw the PLAINTIFF the day after the accident in the emergency room of Hardtner Medical Center. PLAINTIFF complained of severe pain in the right ribs and in the right hand. The medical examination revealed a chip fracture of the fifth metacarpal bone of the right hand. The ribs were also x-rayed and no fractures were found to be present. The right hand was placed in a splint.
Two days later FORD returned to Dr. Mauterer complaining of numbness in the low back radiating down the right leg. X-rays revealed no abnormalities or fractures, and the initial diagnosis was severe muscle strain in the lumbosacral area with sciatica, or inflammation of the sciatic nerve. The PLAINTIFF was hospitalized and treated conservatively for two days at the Hardtner Medical Center. Thereafter, PLAINTIFF received daily physical therapy for a short period of time.
On November 28, 1984, Dr. Mauterer referred the PLAINTIFF to an orthopedic specialist in Alexandria, Louisiana, for his back complaints. The treatment in Alexandria was that of a conservative nature which obviously was not satisfactory to the PLAINTIFF. He returned to Dr. Mauterer on May 1, 1985, still complaining of severe back pain. Dr. Mauterer then referred the PLAINTIFF to Dr. Don Irby of Monroe, Louisiana, who is a neurosurgeon. Dr. Irby examined the PLAINTIFF, admitted him to the hospital on May 13, 1985, and performed a myelogram and a CAT scan. Despite negative results from these tests, Dr. Irby felt that the PLAINTIFF was suffering a L5-S1 laterally protruding foraminal disc. PLAINTIFF was discharged on May 16, 1985, and readmitted on June 5, 1985, for surgery. A laminectomy at the left L5-S1 interspace was performed on June 6, 1985, and PLAINTIFF was discharged on June 13, 1985.
Postoperatively PLAINTIFF was first seen on July 16, 1985, with left sciatica, but improved from his prior condition. On September 24, 1985, the PLAINTIFF was complaining only of occasional back and left hip pain but no leg pain. At that time, he was walking two miles per day every other day and was performing various exercises. On October 22, 1985, the PLAINTIFF was again seen complaining of no leg pain and some back pain but only when walking on uneven terrain. The PLAINTIFF was discharged with a partial permanent disability *773 of 15%. It was felt by Dr. Irby that the PLAINTIFF could return to light duty ...

* * * * * *
The PLAINTIFF was then seen by Dr. Mauterer again on February 5, 1986, complaining of difficulties with his leg and back and was referred again to Dr. Irby. The follow-up visit to Dr. Irby occurred on March 3, 1986, wherein the PLAINTIFF complained that approximately one month after discharge he began to develop intermittent left leg pain and left leg numbness. Dr. Irby's initial diagnosis was a recurrent left L5-S1 disc. He was again admitted to the hospital on March 11, 1986, for diagnostic studies. These studies indicated a blunting of the left L5 nerve root which is next to the last disc space or left L4-5. This was the level above where the prior disc was removed. As the employer and worker's compensation insurer refused to pay for an additional operation, no surgery was performed on this area.
After being released for light duty, FORD refused to return to work even though a position was offered to him. The rig he would have been assigned to was located in Alabama.
PLAINTIFF did go back to work. In January of 1986, he began driving a log truck for Jerry Richardson. Although he would help bind a load from time to time, his principal obligation was that of driver. The loads would be hauled to either Springhill, Louisiana (2-2½ hour trip), or Bastrop, Louisiana (1 hour trip), or Pineville, Louisiana (45 minute trip).
The PLAINTIFF worked from January 1, 1986, to March 10, 1986, for Richardson, and was involved in another accident on February 21, 1986. In this accident, FORD was in the cab of a log truck which turned over while being pulled from the woods onto the highway. Although only the trailer turned over, the frame was bent behind the cab and the headache rack was broken loose. FORD made no claim of personal injury to the investigating officer and was able to move about without difficulty at the scene. Richardson had no worker's compensation insurance. FORD ceased working for Richardson partially because of his back, but primarily because no truck was available for him to drive.
The chronology of events is important in this matter.
September 24, 1985Dr. Irby found his post operative clinical examination to be well within normal limits. FORD was walking two miles every other day and performing various exercises.
October 22, 1985PLAINTIFF was complaining of no leg pain, and only back pain when walking on uneven terrain. He was released by Dr. Irby with a 15% permanent partial disability. Dr. Irby indicated he could return to light duty.
January 1, 1986FORD began work as a truck driver for Richardson.
February 5, 1986FORD saw Dr. Mauterer complaining of back pain with change in weather conditions. He was having difficulty with his left leg and blood pressure was elevated to 130/94. Examination revealed tenderness at the prior incision line and over the left sciatic nerve. The straight leg raising test was positive at 40°. Dr. Mauterer felt that the PLAINTIFF would be unable to set [sic] for long periods of time. FORD neglected to tell the doctor of his employment.
February 21, 1986FORD suffered an accident while working for RICHARDSON.
March 3, 1986FORD saw Dr. Irby again. Complaints were of back bilateral hip pain beginning a month after discharge. (October 22, 1985.) Additionally he complained of intermittent left leg pain and numbness. The straight leg test was positive at 60°, tenderness, was found at the sciatic notch, and moderate lumbosacral muscle spasm was present. Diagnosis was of a probable recurring disc at the L5-S1 level. Again, FORD failed to inform the doctor that he was working, or of the accident in February, 1986.
March 10, 1986PLAINTIFF terminated employment with Richardson.
March 11, 1986PLAINTIFF was admitted to the hospital by Dr. Irby, for *774 diagnostic studies. These reflected blunting of the left L5 nerve root which was above the level of the other operation. He was discharged to Hardtner Hospital for physical therapy.
April 8, 1986Dr. Irby was informed by a report of the physical therapist that the PLAINTIFF had tolerated 60 pounds of traction without difficulty on two visits but had suffered bilateral lower extremity pain on the third visit. At this time PLAINTIFF complained of persistent leg pain. The straight leg raising test was positive at 45° and tenderness was present throughout the lower region. PLAINTIFF indicated to Dr. Irby that he wanted surgery and no more physical therapy.
At the time of the first surgery Dr. Irby did not examine the region complained of in March of 1986. Additionally, given the history of the second accident, he could not state whether the second disc was related to the first accident or second accident.
Q. Well, assuming that the information were to show that there was in fact a subsequent accident but that the cab was not in any way damaged and it was a minor accident, and his testimony was that he didn't reinjure his back, which can be substantiated by employees, would it be your opinion that ...
A. I couldn't really ...
Q. ...the second disc would be related to the employment or not?
A. I wouldn't, couldn't really say."
A trial on the merits was held on October 13, 1986 and Dr. Irby's testimony was received into evidence by deposition. On the morning of trial, plaintiff's counsel was made aware of a medical slip given to plaintiff by Dr. Irby, subsequent to the taking of his deposition, which stated that plaintiff was totally incapacitated and deserving of food stamps. At the conclusion of trial, the note of evidence was left open so that the parties could obtain an updated deposition of Dr. Irby and a clarification from him regarding his statement on this medical slip.
On December 8, 1986, counsel for plaintiff advised the trial court that the parties had agreed to stipulate to admit Dr. Irby's medical slip into evidence and that it would therefore not be necessary to retake his deposition. The note of evidence was closed and written reasons for judgment were rendered on January 21, 1987. A formal judgment was signed on January 26, 1987. Plaintiff then timely applied for a new trial.
On February 4, 1987, plaintiff saw Dr. Irby again for a re-evaluation of his back injuries. In his written medical report of this examination Dr. Irby stated that, after performing a thorough neurological examination of plaintiff and after reviewing Dr. Mauterer's medical evaluation of February 5, 1986, where Dr. Mauterer found plaintiff to have neurological complaints commensurate with a recurrent or intercurrent disc protrusion, and that since plaintiff was not injured in the second accident in February, 1986, then he would "... think his [plaintiff's] disc syndrome, which was either recurrent at L5-S1 or intercurrent at L4-5 on the left, would be related to his [plaintiff's] original injury.".
Dr. Irby's new medical opinion was offered at the time of the hearing on the motion for a new trial held on February 19, 1987. A transcript of the hearing was not made a part of the record on appeal, however, the minute entry for the hearing shows counsel for plaintiff offered Dr. Irby's re-evaluation report into evidence and that defense counsel objected to its admissibility. The objection was sustained by the trial court and the report was proffered into evidence. The plaintiff's motion for a new trial was denied. Plaintiff then perfected a devolutive appeal.
Plaintiff alleges the following assignments of error on appeal:
(1) The trial erred in finding, from a totality of the evidence, that plaintiff's second protruded disc, at the L4-L5 level, was not causally related to the first accident with Justiss Oil Company;
(2) The trial court erred in not awarding worker's compensation benefits to plaintiff, for temporary total benefits, *775 from October 25, 1985 to the time of trial;
(3) The trial court erred, in the alternative, in not awarding plaintiff continuing supplemental earnings benefits beyond December 31, 1985;
(4) The trial court erred in failing to award plaintiff penalties and attorney's fees for the employer's failure to pay continuing compensation and medical benefits to plaintiff; and
(5) The trial court erred in not granting plaintiff a new trial, based upon Dr. Irby's new medical report, causally relating the second protruding disc to plaintiff's first accident with Justiss Oil Company.

MOTION FOR A NEW TRIAL
Although plaintiff asserts several assignments of error on appeal, we will only address his contention that the trial court erred in not granting him a new trial as we are of the opinion that this issue is dispositive of the case at hand.
Plaintiff's request for a new trial is based on LSA-C.C.P. Article 1972, which provides, in pertinent part, as follows:
"A new trial shall be granted, upon contradictory motion of any party, in the following cases:

* * * * * *
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial."
LSA-C.C.P. Art. 1972, section (2) has been consistently interpreted by the jurisprudence to mean that a new trial must be granted on the grounds of newly discovered evidence where such evidence is not merely cumulative, would tend to change the result of the case, was discovered after the trial, and could not, with due diligence, have been obtained before or during the trial. Barker v. Rust Engineering Co., 428 So.2d 391 (La. 1983); Chauvin v. Chauvin, 297 So.2d 234 (La. App. 3 Cir. 1974); Hyatt v. Hartford Accident & Indemnity Company, 184 So.2d 563 (La. App. 3 Cir.1966).
The due diligence standard for a new trial on the basis of newly discovered evidence does not require that a party do all that is possible to discover the evidence; it is sufficient that a party do all that is reasonable to lead to the discovery of the evidence. Barker v. Rust Engineering Co., supra.
On appeal, plaintiff contends the trial court erred in not granting him a new trial in light of Dr. Irby's updated medical report, obtained after the trial and after the matter was decided. Plaintiff further contends that he exercised due diligence in attempting to ascertain all evidence pertaining to his present disability and its causal relationship to his first accident. There can hardly be any argument that this evidence was not discovered, and could not have been discovered, before or during the trial, because the evidence did not even exist until after the trial and the rendition and signing of a judgment.
After a careful examination of the record, we are of the opinion that Dr. Irby's reevaluation report meets all the requirements for newly discovered evidence. It was not merely cumulative because there was no other medical testimony offered at trial directly relating plaintiff's second disc problem to his first accident. Moreover, this evidence is crucial to plaintiff's case and would clearly change the outcome of the case because the trial judge relied almost exclusively on Dr. Irby's lack of medical opinion in resolving the issue of causal relationship.
While it can be argued that plaintiff could have procured the medical examination prior to the close of the note of evidence, his failure to do so does not automatically preclude him from obtaining a new trial. In the interest of justice and in view of the paternalistic aims of the Worker's Compensation Act, an appellate court may remand a compensation proceeding for the taking of further evidence if a medical examination after trial indicates continued or recurrent work caused disability, persisting *776 beyond the date to which the trial court's original judgment allowed compensation, though there is no showing that claimant could not with sufficient diligence have procured the medical examination earlier. LSA-C.C.P. Art. 2164; Cf. Nini v. Volume Merchandise, Inc., 282 So.2d 748 (La.App. 1 Cir.1973); Robinson v. Fidelity & Casualty Co. of New York, 181 So.2d 318 (La. App. 3 Cir.1965).
As the Second Circuit, Louisiana Court of Appeal stated in Jamison v. Reese Variety Stores, Inc., 181 So.2d 464, at page 465 (La. App. 2 Cir.1965):
"Under the provisions of LSA-C.C.P. Art. 2164 this court is directed to render any judgment which is just, legal and proper upon the record of appeal. One of the official revision comments [note (c) ] interpretive of the article makes the comment that the above test is broad enough to permit remands. With full appreciation of the position taken by appellee that litigation should come to an end, we can only state that a strict application of the principle should be modified in the interest of affording a litigant a full opportunity to present all available evidence which could affect a decision...."
This Court in Robinson v. Fidelity & Casualty Co. of New York, supra, at page 320 stated that:
"Pretermitting whether the trial court erred in failing to grant a new trial, we think that sufficient showing has been made by this deposition in order to justify our application of the special paternalistic rule in workmen's compensation cases that, to prevent a truly injured workman from forever losing his day in court, the appeal may be remanded for further evidence if there is a showing by medical reports or otherwise which reasonably indicates a continued or recurrent work-caused disability persisting beyond the date to which the trial court's original judgment allowed compensation..." (Citations omitted.)
For the foregoing reasons, the judgment of the trial court denying plaintiff a new trial is reversed, vacated and set aside. Plaintiff's request for a new trial is granted, and the case is remanded to the trial court for further proceedings. All costs of these proceedings, both at trial and on appeal, are hereby assessed against defendants-appellees.
REVERSED AND REMANDED.