631 So.2d 671 (1994)
Randy Joseph GARY, Plaintiff-Appellee,
v.
H B ZACHRY COMPANY, INC., Defendant-Appellant.
No. 93-581.
Court of Appeal of Louisiana, Third Circuit.
February 2, 1994.
*672 Rex Douglas Townsley, Lake Charles, for Randy Joseph Gary.
Benjamin Wakefield Mount, Thomas John Gayle, Lake Charles, for H B Zachry Co., Inc.
Before DOUCET and KNOLL, JJ., and CULPEPPER,[*] J. Pro Tem.
WILLIAM A. CULPEPPER, Judge Pro Tem.
This is a workers' compensation case. On September 26, 1990, plaintiff, Randy Joseph Gary, suffered an injury, allegedly to his back, while in the course and scope of his employment with defendant, H B Zachry Company, Inc. The hearing officer originally rendered judgment in favor of defendants, H B Zachry and Cigna Property and Casualty Ins. Co. (the insurer), finding that any disability plaintiff has was not caused by the accident. Plaintiff subsequently obtained objective evidence to support his claim of disability. Upon application for modification and reversal of judgment by plaintiff, the hearing officer ordered that the cause be reopened and the matter set for a new hearing on the merits. After a second hearing, the hearing officer held in favor of plaintiff. Defendants appeal.
The substantial issues are whether the hearing officer erred in:
1. denying defendants' exception of res judicata and granting a hearing for modification under LSA-R.S. 23:1310.8(A)(1);
2. failing to deny benefits because plaintiff did not truthfully answer his preemployment application as required by LSA-R.S. 23:1208.1;
3. finding plaintiff's low back injury causally related to the 1990 accident;
4. awarding full medical benefits, above the $750 cap provided by LSA-R.S. 23:1142(B), for testing and treatment not approved by defendants.

General Facts
Plaintiff worked for H B Zachry as a lead insulator. On September 26, 1990, he and a co-worker were working on a scaffold. A piece of equipment, being used by other employees, struck the scaffold. The scaffolding lifted up, pinning plaintiff between the scaffolding and a pipe and twisting him around.
*673 Plaintiff complained of back and neck pain following the incident, and he immediately sought medical attention. He began receiving weekly workers' compensation benefits on September 30, 1990.
Plaintiff initially saw Dr. Robert Dale Bernauer, an orthopedic surgeon, on October 3, 1990. He had multiple complaints at that time. Dr. Bernauer performed a normal orthopedic exam, placed plaintiff on physical therapy and continued to follow him.
A functional capacity evaluation was performed on January 3, 1991, and inconsistencies were noted.
Dr. Bernauer ordered an MRI, which was normal in the neck but showed some dehydration and bulging at L4-5 and a fusion at L5-S1. Plaintiff had sustained a prior back injury in 1985 and underwent a fusion at L5-S1 in 1986.
At some point, defendants obtained a video tape of plaintiff riding a motorcycle shortly after the accident, which Dr. Bernauer viewed.
Dr. Bernauer released plaintiff on February 22, 1991, to return to work within three days of that time, apparently because he felt that he had offered plaintiff everything he could and also because Dr. Bernauer found that plaintiff may have been a malingerer.
On March 3, 1991, defendants discontinued benefits based upon (1) misrepresentations by plaintiff on his preemployment application regarding his prior back injury and treatment; (2) the video showing plaintiff riding a motorcycle after the accident and his subsequent denial of the fact in a deposition; (3) the report from Lake Charles Memorial Hospital and the work hardening program in which plaintiffs answers were found to be inconsistent; and (4) Dr. Bernauer's report releasing plaintiff.
On March 11, 1991, plaintiff saw Dr. Dean Moore, a neurosurgeon. Plaintiff's chief complaints at that time were neck and low back pain. Dr. Moore found some limitation in motion, a positive straight leg raising test, and some weakness and decreased sensation in plaintiff's right foot. Dr. Moore did not know exactly what the problem was. He recommended additional testing of the back, specifically a CAT scan, Tomograms, and an EMG. He could not make any more out of his neck condition than a straining injury.
Plaintiff also saw Dr. Bernauer again on May 17, 1991. On that examination, Dr. Bernauer "didn't find a whole lot with him." He did find some questionable weakness and some sciatic nerve complaint. Dr. Bernauer was also of the opinion that the testing recommended by Dr. Moore should be done. However, he felt that there was still evidence of some functional overlay or exaggeration.
After the recommendations of further testing, on July 7, 1991, defendants reinstituted compensation and authorized various tests. The first test scheduled was the CAT scan. On July 23, 1991, plaintiff went to the Diagnostic Imaging Center to undergo that test. At that time there was some confusion over which area or areas were scheduled to be examined. Cynthia Richardson, an x-ray technician at the Center, testified that she told plaintiff that he was scheduled for a CAT scan of the lumbar spine. She testified that plaintiff informed her that nothing was wrong with his back but that there was something wrong with his neck. It was verified that plaintiff was to undergo a CAT scan on his lumbar spine. Plaintiff testified that he asked for both his neck and low back, and that he wanted to know why the test was not approved for his neck.
Plaintiff underwent the lumbar CAT scan which showed some mild posterior annular bulging centrally and on the left side at L4-5 with mild bilateral neuro foraminal narrowing and the previous fusion and laminectomy at L5-S1 on the left.
On August 4, 1991, defendants again terminated benefits on the basis of the testimony of Cynthia Richardson that plaintiff had stated that there was nothing wrong with his back and also on the basis of the reports that showed there was nothing wrong with plaintiff's neck. Defendants did not approve the EMG or Tomograms after the CAT scan because "[t]here was no reason for it." It was determined that it was not of interest to pay for additional tests when plaintiff did not have a back problem.
*674 The matter was set for trial. Plaintiff alleged entitlement to certain medical expenses, past-due compensation from March 3, 1991, until July 7, 1991, temporary total disability benefits after August 4, 1991, and other expenses. The hearing was held on September 17, 1991. On October 3, 1991, the hearing officer signed a judgment in favor of defendants, dismissing plaintiff's claim. The hearing officer stated:
"The evidence overwhelmingly shows that any disability the poor man may have is a result of longstanding emotional problems which were certainly not caused by the accident. (See July 1, 1991 evaluation report of Dr. Rennie Culver, M.D.) Furthermore, claimant is not credible. This is demonstrated by the falsehoods he gave on his employment application which could have affected the employer's right to relief from the Louisiana second injury board, his falsehoods given at his deposition concerning a riding a motorcycle after the accident, and the suspicious inconsistencies of his performance in the functional capacity evaluation. Consequently, any subjective complaints given by claimant to support an allegation of disability must be viewed critically by this Office, and after having done so, are found to be unreliable."
After the hearing, plaintiff underwent the Tomograms and EMG at his own expense and without defendants' approval. The EMG showed an L5 root lesion bilaterally, more so on the left side, and the Tomograms showed that plaintiff did not have a solid fusion between L5 and S1. Dr. Bernauer testified that these two tests were the first objective evidence of the complaints that plaintiff was having prior to September of 1991. Dr. Bernauer was of the opinion that if the EMG and Tomograms had been authorized and performed prior to trial, he would have found the 1986 fusion at L5-S1 was torn. Additionally, Dr. Bernauer changed his opinion concerning whether plaintiff was a malingerer. He was of the opinion that these objective tests confirm why plaintiff was having the complaints that he was having all along, even back to 1990 and 1991.
Plaintiff filed an "Application for Modification and Reversal of Judgment" pursuant to LSA-R.S. 23:1331 or 23:1310.8 on the basis of this new evidence. Attached to the application was the radiology report and the following letter dated March 4, 1992, from Dr. Bernauer (in part):
"I reviewed the chart on Randy Gary. Mr. Gary had an unhealed fusion when I first saw him. I feel he probably had a nonunion of his fusion, but he had what is known as a fibrous union which means that he had strong fibrous tissue joining this bone. When he has this accident, I feel he probably tore this fibrous tissue and his fusion has become unstable. He at this time continues to not have a stable fusion, there is a non-union present. I do not feel the fibrous union has healed and there is motion in this area. I think this is what is causing his pain and I think that a second fusion is necessary at this time."
On March 24, 1992, plaintiff underwent surgery without authorization from defendants. Dr. Moore performed a partial hemilaminectomy at L4-5 and L5-S1 bilaterally and a diskectomy at L4-5 bilaterally; Dr. Bernauer performed a two-level fusion from L4 to S1 and implanted an electrical bone stimulator which was subsequently removed.
The hearing officer granted plaintiff's application, reopened the case and set the matter for hearing which was held on November 9, 1992. Defendants filed an exception of res judicata which the hearing officer denied at the hearing. On January 6, 1993, judgment was rendered in favor of plaintiff for full weekly compensation benefits from March 1, 1991, to present together with legal interest as well as future weekly compensation. The hearing officer also ordered defendants to pay all outstanding medical bills together with legal interest. From this judgment, defendants appealed.

Res Judicata and Application For Modification
Defendants contend the hearing officer erred in denying the exception of res judicata and granting a hearing for modification.
The hearing officer denied the defendants' exception and granted plaintiff's application *675 on the basis of LSA-R.S. 23:1310.8(A)(1), which provides:
"A. (1) The power and jurisdiction of the hearing officer over each case shall be continuing and he may, upon application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be justified, including the right to require physical examinations as provided for in R.S. 23:1123, provided, that upon petition filed by the employer or insurance carrier, and the injured employee, or other person entitled to compensation under the Worker's Compensation Act, a hearing officer shall have jurisdiction to consider the proposition of whether or not a final settlement may be had between the parties presenting such petition, subject to the provisions of law relating to settlements in worker's compensation cases."
Defendants assert that this section of the statute is not an exception to res judicata but that it deals with the hearing officer's continuing jurisdiction to facilitate final compromise settlements. Defendants assert, rather, that LSA-R.S. 23:1310.8(B) provides the authority for a hearing officer to reopen a matter when appropriate, and that if subsection (A) applies, it would read subsection (B) out of the statute. Subsection (B) provides:
"B. Upon the application of any party in interest, on the ground of a change in conditions, the hearing officer may, after a contradictory hearing, review any award, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in the Worker's Compensation Act, and shall state his conclusions of fact and rulings of law, and the director shall immediately send to the parties a copy of the award."
(Emphasis added.)
Section (B) obviously would not be applicable to the case at hand since there was not a prior "award" and since plaintiff did not base his application on a "change in conditions." Rather, plaintiff based his application on the discovery of objective evidence after the hearing that would have supported the subjective complaints he made prior to the hearing.
Defendants cite LeBlanc v. Consolidated Aluminum Co., 433 So.2d 361 (La.App. 3d Cir.1983) where the court sustained an exception of res judicata based on a prior judgment in favor of the defendant on the issue of causation. The court held plaintiff's subsequent petition for modification under LSA-R.S. 23:1331 was barred. However, see Disotell v. Wadsworth Golf Const. Co., 500 So.2d 371 (La.1987) and Green v. Continental Ins. Co., 539 So.2d 1287 (La.App. 3d Cir. 1989) which appear to hold under later amendments to the statute that plaintiff can seek modification even where there was no previous award of benefits. We note also LSA-R.S. 1310.5(B), effective January 1, 1990, which provides that the decision of the hearing officer is final unless appealed to the circuit court of appeal within the delays for appeals established by the Code of Civil Procedure.
Obviously, the res judicata issue is difficult. We prefer to pretermit deciding whether the hearing officer erred in rehearing this case as a motion to modify under LSA-R.S. 23:1310.8(A)(1). Under LSA-C.C.P. art. 2164 we will treat plaintiff's motion as being one for a new trial under LSA-C.C.P. art. 1972(2), which provides a new trial shall be granted: "When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial."
The hearing officer expressly stated, and it is not disputed by defendants, that no notice of judgment was given as required by LSA-C.C.P. art. 1913. Hence, under LSA-C.C.P. art. 1974 the delay for applying for a new trial did not start before the motion was filed.
Defendants argue plaintiff could have obtained the Tomogram and the EMG prior to trial, thus negating due diligence required for new evidence under LSA-C.C.P. art. 1972(2).
Judgments in workers' compensation cases are treated differently than ordinary judgments. *676 See for example, Romero v. Grey Wolf Drilling Co., 594 So.2d 1008 (La.App. 3d Cir.1992), in which this court was faced with the issue of whether or not the plaintiff should be allowed to reopen by way of a new trial a closed workers' compensation case for the purpose of rebutting evidence of the availability of a telephone solicitation position as it may affect the determination of the plaintiff's supplemental earnings benefits. The defendant in that case strenuously opposed reopening the case, emphasizing that the plaintiff could have applied for the position when he learned of the opening (prior to trial). We noted that "[i]n any kind of action other than a worker's compensation proceeding, defendant's position would be meritorious, and denial of a new trial under the circumstances would be in order. However, in the context presented by this worker's compensation case, the issue is quite serious." We granted the new trial. See also Ford v. Hartford Ins. Co., 528 So.2d 770 (La.App. 3d Cir.1988), in which the trial court denied the plaintiff temporary total and supplemental earnings benefits and failed to grant the plaintiff a new trial despite updated medical evidence. We held:
"While it can be argued that plaintiff could have procured the medical examination prior to the close of the note of evidence, his failure to do so does not automatically preclude him from obtaining a new trial. In the interest of justice and in view of the paternalistic aims of the Worker's Compensation Act, an appellate court may remand a compensation proceeding for the taking of further evidence if a medical examination after trial indicates continued or recurrent work caused disability, persisting beyond the date to which the trial court's original judgment allowed compensation, though there is no showing that claimant could not with sufficient diligence have procured the medical examination earlier. LSA-C.C.P. Art. 2164; Cf. Nini v. Volume Merchandise, Inc., 282 So.2d 748 (La.App. 1 Cir.1973); Robinson v. Fidelity & Casualty Co. of New York, 181 So.2d 318 (La.App. 3 Cir.1965).
"As the Second Circuit, Louisiana Court of Appeal stated in Jamison v. Reese Variety Stores, Inc., 181 So.2d 464, at page 465 (La.App. 2 Cir.1965):
`Under the provisions of LSA-C.C.P. Art. 2164 this court is directed to render any judgment which is just, legal and proper upon the record of appeal. One of the official revision comments [note (c)] interpretive of the article makes the comment that the above test is broad enough to permit remands. With full appreciation of the position taken by appellee that litigation should come to an end, we can only state that a strict application of the principle should be modified in the interest of affording a litigant a full opportunity to present all available evidence which could affect a decision....'
"This Court in Robinson v. Fidelity & Casualty Co. of New York, supra, at page 320 stated that:
`Pretermitting whether the trial court erred in failing to grant a new trial, we think that sufficient showing has been made by this deposition in order to justify our application of the special paternalistic rule in workmen's compensation cases that, to prevent a truly injured workman from forever losing his day in court, the appeal may be remanded for further evidence if there is a showing by medical reports or otherwise which reasonably indicates a continued or recurrent work-caused disability persisting beyond the date to which the trial court's original judgment allowed compensation...' (Citations omitted.)"
528 So.2d at 775, 776.
Therefore, we affirm the denial of defendants' exception of res judicata; and, treating the motion for modification as a motion for a new trial, we affirm the granting of a new trial on the merits.

Preemployment Application
Defendants maintain that the hearing officer erred in failing to deny plaintiff benefits because he did not answer his preemployment application truthfully.
The preemployment application (Defendant's Exhibit 2) contains the following question: "Have you had any injuries for which *677 you have received medical treatment during the past 5 years...." Plaintiff checked "No." The preemployment application is dated March 9, 1990. As noted above, plaintiff had injured his back in 1985 and had surgery on his back in 1986. Plaintiff explained at the second hearing that he did not properly answer the question because it had been almost five years since he had been injured and he did not feel it was necessary; at the first hearing, he stated that he did not really feel like it meant much because he could do the work and had been doing the work since then.
Defendants cite LSA-R.S. 23:1208.1 and Carter v. Our Lady Regional Medical Center, 612 So.2d 805 (La.App. 1st Cir.1992), to support their proposition that plaintiff should be required to forfeit his benefits because he lied on his preemployment application.
LSA-R.S. 23:1208.1 provides:
"Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type."
(Emphasis added.)
We have not found, and defendants do not suggest, that the form on which the inquiries about previous medical conditions were made contains the required notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under LSA-R.S. 23:1208.1. Thus, LSA-R.S. 23:1208.1 is not enforceable to require a forfeiture of benefits. Defendants cite Carter, supra, for the proposition that plaintiff's failure to state a contemporaneous objection should preclude him from availing himself of the technical argument of the statute. However, Carter is inapposite since in that case notice was given; however, the plaintiff-employee argued for the first time on appeal a technical violation of the notice concerning the requirement of 10 point type. We find defendants' argument in this regard without merit.

Causation
Defendants contend that the hearing officer was manifestly erroneous in finding that plaintiff sustained his burden of proving that the injury diagnosed by the Tomograms was causally connected to the accident in September, 1990.
When an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability. Once the disabled employee establishes the presumption of a causal relationship, the party denying the existence of the presumed fact assumes both the burden of producing evidence and the burden of persuasion on the issue. Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320 (La.1985).
Plaintiff had surgery on his back in 1986 for the prior work-related accident in 1985. He testified that before his workrelated accident on September 26, 1990, he had been engaged in heavy manual labor for three to four years without any problems and that he did not see any doctors during that time. Plaintiff began complaining of pain in his neck and lower back and sought medical treatment shortly after the 1990 accident. The only evidence of an intervening cause is an automobile accident which occurred after *678 his surgery (of March 24, 1992) which resulted in damage to the car but no injuries. Additionally, plaintiff testified that his legs have "given out" on him three or four times, but he did not think it caused any further injury.
However, defendants contend that the plaintiff is not entitled to the presumption of causation because the medical testimony does not establish a reasonable possibility of a causal connection between the accident and the plaintiff's condition diagnosed by the Tomogram.
However, the medical evidence does indicate a reasonable possibility of a causal connection. Dr. Bernauer testified as follows:
"Q AND THEN ONE OF YOUR CONCLUSIONS IS THAT IT COULD HAVE BEEN AGGRAVATED BY THE ACCIDENT IN 1990 AT H.B. ZACHRY?
A RIGHT.
Q ISN'T IT TRUE ALSO, DOCTOR, THAT IT COULD HAVE BEEN JUST AS PROBABLE THAT IT COULD HAVE BEEN AGGRAVATED BY A NONWORK RELATED ACCIDENT?
A THAT'S TRUE.
Q WE HAVE VIDEO SEEING THIS MAN ON A MOTORCYCLE WITH NO REALLY EVIDENCE OF PAIN AND FOR YOU TO SAY THAT IT WAS THE H.B. ZACHRY ACCIDENT OR NONWORK RELATED ACCIDENT IT WOULD BE VERY DIFFICULT AS TO EXACTLY WHAT CAUSED THIS?
A RIGHT."
Additionally, the very circumstances of the accident indicate a reasonable possibility that plaintiff injured his low back when he was pinned between the scaffolding and a pipe, twisting him around.
The hearing officer could have found that the plaintiff was entitled to the presumption and that defendant failed to rebut the presumption. We find no manifest error in this regard. See Stobart v. State through DOTD, 617 So.2d 880 (La.1993); Thomas v. Highlands Ins. Co., 617 So.2d 877 (La.1993).

Medical Benefits
Defendants were ordered to pay any and all outstanding medical bills arising from plaintiff's September 26, 1990, work-related accident, together with legal interest thereon. Defendants assert that the hearing officer was in error in granting full medical benefits in light of LSA-R.S. 23:1142, which places a $750 "cap" on nonemergency medical treatment and diagnoses when the claimant fails to seek the consent of the employer or insurer.
LSA-R.S. 23:1142(B) provides:
"B. Nonemergency care. Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's worker's compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider."
However, subsection (E) of the statute provides:
"E. Exception. In the event that the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury."
Randy Collins, a claims adjuster for Cigna, testified that they terminated compensation in August of 1991, on the basis of Cynthia Richardson's testimony that plaintiff stated that there was nothing wrong with his back, that it was his neck, and also on the basis that other reports showed nothing wrong with the neck. Collins indicated that they did not approve the Tomograms of the lumbar area and the EMG because "[t]here was no reason for it."
Pretermitting the issue of whether the diagnostic testing and treatment were "nonemergency", since Cigna took the position *679 that plaintiff did not have a back or neck injury, no prior approval was required. Accordingly, we affirm the award of medical benefits.

DISPOSITION
For the foregoing reasons, we affirm the hearing officer's judgment at defendants' cost.
AFFIRMED.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.