679 So.2d 167 (1996)
Vera STERLING
v.
ORLEANS PARISH SCHOOL BOARD.
No. 96-CA-0107.
Court of Appeal of Louisiana, Fourth Circuit.
June 26, 1996.
*169 Thomas E. Dunn, Dunn Law Firm, Mandeville, for Plaintiff-Appellee.
James M. Taylor, Taylor, Wellons & Politz, New Orleans, for Defendant-Appellant.
Before BARRY, BYRNES and MURRAY, JJ.
BYRNES, Judge.
Vera Sterling was injured in 1990 while employed by the Orleans Parish School Board as a cafeteria worker. She received worker's compensation benefits until April of 1993 based on a diagnosis of chronic costochondritis, an inflammation of the juncture where the ribs meet the sternum. She returned to light duty work in August of 1993.
*170 In April of 1994, Sterling claims an aggravation of the prior injury such that she had to discontinue working. It is the aggravation of the pre-existing injury that is the basis of the instant litigation.
Sterling sought treatment from a family practice physician, Dr. Henry Evans, who felt that Sterling had aggravated her prior injury. He diagnosed costochondritis.
The adjuster refused to pay weekly compensation to the claimant stating that the claim had prescribed because it was the same injury from 1990 for which no benefits had been paid in over a year. The hearing officer found that the claimant proved by a preponderance of the evidence that she had sustained a work-related accident on April 20, 1994 as defined in LSA-R.S. 23:1021(1). This accident was compensable because it worsened her pre-existing condition and made it disabling.
The hearing officer awarded Temporary Total Disability Benefits through August 18, 1994 and Supplemental Earnings Benefits thereafter for a period not to exceed 520 weeks. The hearing officer also held that the School Board's failure to investigate the claim and to pay benefits was arbitrary and capricious and awarded Sterling attorney's fees of $2,500.00 and a penalty of $2,000.00. The School Board appeals. Ms. Sterling filed an answer and a supplemental answer to the appeal.
We affirm.

I. PRESCRIPTION AND THE AGGRAVATION OF A PREEXISTING INJURY
The School Board argues that Ms. Sterling's claim prescribed because she received no benefit payments between April, 1993, until she filed this claim for benefits on June 30, 1994, a period exceeding one year. LSA-R.S. 23:1209(A) provides that benefits for temporary total disability prescribe one year from the date of the last payment. However, that is based on the assumption that the claim for benefits is based only on the original injury. In the instant case the claimant asserts that her claim is based on an aggravation of the original injury, which aggravation occurred in April of 1994 in such a manner as to constitute a new "accident". Plaintiff contends that the date of the April, 1994 accident is the date that should be used for prescriptive purposes. We agree.
An employee's disability is compensable if a preexisting condition or disease is activated or precipitated into a disability manifestation as a result of work. Herty v. City of New Orleans, 94-1960 (La.App. 4 Cir. 4/13/95); 654 So.2d 785.
In Gary v. H B Zachry Co., Inc., 93-581 (La.App. 3 Cir. 2/2/94); 631 So.2d 671, 677, writ denied, 94-0540 (La. 4/22/94); 637 So.2d 159, the appellate court stated:
When an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability. Once the disabled employee establishes the presumption of a causal relationship, the party denying the existence of the presumed fact assumes both the burden of producing evidence and the burden of persuasion on the issue. Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320 (La.1985).
In McConnell v. City of Ruston, 27,154, p. 5-6 (La.App. 2 Cir. 8/23/95); 660 So.2d 100, 102-103, writ denied, 95-2348 (La. 12/15/95); 664 So.2d 453, the appellate court stated:
The "actual, identifiable, precipitous event" under the present law may include a routine movement or task that the claimant regularly performs, if the claimant is able to identify with some particularity as to time, place and manner, the objective manifestation of the accidental injury. See, for example, these cases in which a compensable work accident resulting from the performance of routine tasks has been found, based on evidence of a sudden identifiable *171 event: Rice [v. AT & T, 614 So.2d 358 (La.App. 2 Cir.1993)], supra (telephone assembly line worker with pre-existing back problems felt back pain and leg numbness as she tried to push her chair closer to the line while twisting and turning to reach the telephone parts); Doucet v. Baker Hughes Production Tools, 93-3087 (La. 3/11/94), 635 So.2d 166 (worker with congenital back instability "felt his back snap" while moving equipment at work); and Haley v. Beall-Ladymon Corp., 25,619 (La.App. 2d Cir. 3/30/94), 634 So.2d 917, writ denied (movement of retail merchandiser up or down ladder as she reached toward display, which produced immediate "sharp, shooting pain" and swelling in her foot, caused or aggravated abnormality of her lymphatic system, resulting in chronic foot swelling).
In Dyson v. State Employees Group Benefits Program, 610 So.2d 953 (La.App. 1 Cir. 1992), the court concluded that an accident had occurred when the claimant, a clerk whose job required her to stand all day making copies at a photocopy machine, felt a very sharp pain shoot through her feet when she turned to pick up an unusually large bundle of copies, although the root cause of her injury was cumulative trauma or plantar fasciitis, an inflammation of the heel.
After her original injury in 1990, Ms. Sterling went back to her job as a school cafeteria worker on a light duty basis. However, Ms. Sterling testified that on or about April 20, 1994 she was required to serve an "early lunch" which meant that she had to serve at a much faster than usual pace and without the usual rest breaks. She stated that:
[W]hen I turned around to try to get one of the pans to try to replenish the line, that's when I took with the sharp sharp pain in my chest. And I said, on the line, I said, "Whoa, wait, I can't move. I have a sharp pain in my chest."
Ms. Sterling testified that when this happened she sat down and rested. She said that she then went to the kitchen and tried to scrub pots and pans. On this particular day this task was more onerous than usual because she was required to give them an "end of the year" scrubbing with the expectation that "you have to scrub on them where they be exactly as if you was going in the store to purchase a smack brand new pan." Otherwise she would be required to scrub them again. She testified that:
[W]hile I was at the sink scrubbing the pots and pans, and I was putting, my, you know, strong force on it, you know, to try to get it as clean as I could, I took with the same pain again.
Again she sat down to rest. She attempted no further work that day. She stated that she attempted to work in pain for the next few days until she went to see Dr. Evans. Her version of events was corroborated by two co-workers, Ms. Myra Lambert Pierre and Ms. Charline Sluss. The School Board's briefs do not dispute the credibility of either of these two witnesses for the plaintiff. Additionally, Dr. Evans concluded that the plaintiff had aggravated her prior injury.
Worker's compensation is payable when an occupational accident aggravates or accelerates a preexisting condition and produces disability. Chevalier v. L.H. Bossier, Inc., 617 So.2d 1278 (La.App. 3 Cir.1993); Fiffie v. Borden, Inc., 618 So.2d 1199 (La. App. 5 Cir.), writ denied 624 So.2d 1235 (La.1993).
Thus the record supports the plaintiff's contention that she experienced a sudden identifiable work related event or "accident" on or about April 20, 1994 which aggravated her pre-existing costochondritis, establishing a new prescriptive period and entitling her to compensation.
Based on a review of the record as a whole we cannot say that it was error for the hearing officer to conclude that the exacerbation or aggravation of the plaintiff's preexisting injury was caused by an event which directly produced sudden objective findings of an injury, where the claimant was found to have experienced a dramatic change in her condition, rather than merely a manifestation of a gradual deterioration or progressive degeneration in the claimant's condition. Rice v. AT & T, 614 So.2d 358 (La.App. 2 Cir. 1993).

*172 II. CONFLICTING MEDICAL EXPERTS
The hearing officer awarded Ms. Sterling Temporary Total Disability Benefits for the period beginning April 20, 1994 through August 18, 1994, the date she was examined by Dr. Mimeles, and Supplemental Earnings Benefits thereafter for a period not to exceed 520 weeks. Dr. Evans was the only doctor who examined Ms. Sterling from April 20, 1994, until she was examined by Dr. Mimeles on August 18, 1994. It was Dr. Evans' opinion that she was unable to return to work during that time period. Her testimony concerning her accident and its disabling effect upon her was confirmed by two co-workers. Therefore, we cannot say that the hearing officer's finding that she was totally disabled during this period as a result of a work related accident was manifestly erroneous.
On August 18, 1994, Ms. Sterling was examined by Dr. Mimeles. His report of that date stated that she could return to work. The hearing officer in apparent disregard of Dr. Mimeles' opinion awarded her Supplemental Earnings Benefits from August 18, 1994, for a period not to exceed 520 weeks.
The School Board assigns as error the decision of the hearing officer to give more weight to the opinion of Dr. Evans, Ms. Sterling's treating physician, than to the opinions of Dr. Mimeles, the orthopedist selected by the School Board, and Dr. Millet, the orthopedist selected by the Office of Worker's Compensation in an attempt to resolve the conflict between the opinions rendered by Dr. Evans and Dr. Mimeles.
Dr. Henry Evans, a non-board certified family practitioner and Ms. Sterling's treating physician, declared that the claimant was disabled from her regular employment.
The School Board contends that greater weight should be given to the report of Dr. Mimeles because Dr. Mimeles is a specialist in orthopedics. The record contains no evidence of Dr. Mimeles' qualifications. His report consists of a one paragraph letter dated August 18, 1994 and reports on a visit of that date. The report states that "we have treated the patient over the last three years on several occasions for an alleged costochondritis," but gives no specifics, i.e., past treatments are not described and "several occasions" is not defined.
The plaintiff was recalled to the stand at the close of the trial to testify about her treatment by Dr. Mimeles. She testified that she had seen Dr. Mimeles only twice: once in connection with her original injury and the second and only other time on the date of his report, August 18, 1994, in connection with her second "accident." She stated that his August 18, 1994 examination of her was brief and perfunctory. The School Board did not attempt to cross examine plaintiff on this portion of her testimony and offered nothing in rebuttal. Supporting plaintiff's contention concerning the paucity of medical attention she received from Dr. Mimeles is a letter from Dr. Mimeles to the School Board dated March 16, 1993 stating that he had "not seen Ms. Sterling since 11/21/91. It was my opinion at that visit that she had a costochondritis." [Emphasis added.] Dr. Mimeles' letter makes no mention of any visit subsequent to November 11, 1991.
Based on a review of the record as a whole, we cannot say that the hearing officer was manifestly erroneous or clearly wrong if she concluded, as we infer she did, that Dr. Mimeles had seen Ms. Sterling only once in connection with her original injury in 1991, and only briefly once again on August 18, 1994, in connection with the aggravation of that injury that is the subject of this suit. We further infer that having so concluded, the hearing officer then chose to give greater weight to the testimony of the treating physician, Dr. Evans, in spite of Dr. Mimeles' allegedly superior expertise. We cannot say that such a decision was unreasonable given the facts found in this case.
In response to the conflict between the opinions of Dr. Evans and Dr. Mimeles, the Office of Worker's Compensation appointed Dr. Chad Millet as an independent medical examiner. He examined Ms. Sterling on October 27, 1994 and recommended a bone scan and a functional capacity evaluation. The bone scan was normal and the functional capacity evaluation concluded that she was *173 exaggerating her symptoms and was not making a maximum effort in performing the tasks called for in the evaluation; but the evaluation also recommended light work which is inconsistent with the normal demands made on school cafeteria workers. It was Dr. Millet's opinion that Ms. Sterling could return to work without restrictions.
LSA-R.S. 23:1123 provides that the report of the appointed independent medical examiner, Dr. Millet, "shall be prima facie evidence of the facts therein stated ..." However, Dr. Millet's report is not conclusive. In Menard v. Winn Dixie Louisiana, Inc., 93-1497, p. 13 (La.App. 3 Cir. 6/1/94); 640 So.2d 775, 783, the court stated:
[W]hile the law permits the hearing officer to appoint a physician to perform an independent medical examination, it does not require the hearing officer to accept his conclusions. [Citation omitted.] A hearing officer simply does not cede the responsibility afforded her office when she chooses to appoint an independent medical examiner.
Plaintiff's bone scan, which was ordered by Dr. Millet at the end of 1994, was negative. At the time Ms. Sterling was examined by Dr. Millet she had been on anti-inflammatory drugs prescribed by Dr. Evans for a number of months and had moved from the acute phase of the aggravation of her costochondritis to the chronic phase. Dr. Evans testified that he had a bone scan done in 1991 not long after the time of Ms. Sterling's original injury which occurred at the end of 1990. At that time her costochondritis was in the acute phase and the bone scan was positive. But it was Dr. Evans' opinion that a bone scan might not be effective in diagnosing costochondritis later in the chronic phase. Therefore, we cannot say that the hearing officer was manifestly erroneous in choosing to discount Dr. Millet's opinion because it was based on a diagnostic procedure that the hearing officer could reasonably conclude was not reliable in this particular fact situation.

III. THE FUNCTIONAL CAPACITIES EVALUATION
Ms. Sterling contends that the admission into evidence of the functional capacities evaluation report was error, but acknowledges that it was harmless error because the hearing officer was not swayed by it in reaching her decision.
The School Board counters that the functional capacities evaluation report was admissible both under the less technical rules of evidence governing worker's compensation hearings and because the report could be considered to be a duly authenticated medical report exception to the hearsay rule.
We agree with the claimant that any error in the admission of the report into evidence by the hearing officer was harmless, and the report does not change the outcome of this appeal. A finding of harmless error precludes a review of the School Board argument.

IV. DR. EVANS' EXPERT WITNESS FEE
Plaintiff contends in a supplemental answer to the School Board's appeal that the hearing officer erred in failing to award her $400.00 to cover the cost of Dr. Evans' expert witness fee. The amount of that fee is not contested. Plaintiff argues that the failure to award that fee to her was unintentional and/or an abuse of discretion.
There is nothing in the record to suggest that the failure of the hearing officer to award the expert fee to the plaintiff was the result of error or oversight on the part of the hearing officer. The judgment specifically provides "that Dr. Evans be paid an expert witness fee of $400.00 by claimant." [Emphasis added.] The only inference such language will permit is that the hearing officer's decision to charge Dr. Evans' fee to Ms. Sterling was the intentional exercise of the hearing officer's discretion to do so. It is settled law that "the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." LSA-C.C.P. art. 1920. It is also settled that the exercise of the hearing officer's discretion in awarding such costs is reviewable on appeal only for the abuse thereof. In this case we find no such abuse.

*174 V. THE DENIAL OF BENEFITS WAS ARBITRARY AND CAPRICIOUS
The record shows that the adjuster for the School Board assumed that Ms. Sterling's complaint arose out of her original injury, and that as such it had prescribed. The adjuster did not consider the possibility that Ms. Sterling's claim, although related to her original injury, was actually an aggravation of that injury arising out of a new "accident". The record supports the hearing officer's finding that the School Board had knowledge of sufficient facts to put it on notice of what happened to Ms. Sterling or to investigate further which it failed to do. An employer cannot choose to remain in deliberate ignorance of facts that would justify a claim by failing to investigate the claim and then rely on that ignorance as justification for a good faith refusal to pay claims. Hall v. McDonald Insulation, 537 So.2d 328, 332 (La.App. 1 Cir.1988). We cannot say that the hearing officer abused her discretion in assessing penalties of $2,000.00 and attorney fees of $2,500.00 against the School Board based on a finding that the actions of the School Board were arbitrary and capricious. We note that the School Board contests only the finding that its refusal to pay was arbitrary and capricious. It does not contest the amount of the penalties and fees.

VI. ATTORNEY'S FEES
In her answer to the School Board's appeal, Ms. Sterling contends that the hearing officer's award of only $2,500.00 in attorney's fees should be increased. Ms. Sterling also requests an increase of attorney's fees for the additional effort expended at the appellate level. A hearing officer has great discretion in the award of attorney's fees and penalties, and the exercise of such discretion will not be disturbed on appeal unless clearly wrong.
Plaintiff contends that she is entitled to reasonable attorney fees. Plaintiff argues that she has "the standard 20%/10% attorney fee contract and this is a fee regulated by our Worker's Compensation statute and must be considered a reasonable fee." Plaintiff cites no authority in support of this argument. We assume that she must be alluding to LSA-R.S. 23:1141 B which provides:
In no case shall the fees of an attorney who renders service for an employee coming under this Chapter exceed twenty percent of the first twenty thousand dollars and ten percent of the part of any award in excess of twenty thousand dollars. [Emphasis added.]
LSA-R.S. 23:1141 B[1] sets a ceiling on attorney fees. It does not define what is reasonable below that amount. Barilleaux v. George D. Mattix, Inc., 202 So.2d 461, 463 (La.App. 4 Cir.1967). The jurisprudence uniformly holds that in those instances in which the awarding of attorney fees is found to be appropriate, that the fixing of those fees is within the discretion of the trial court, reviewable on appeal only for the abuse of that discretion.
Plaintiff also asks this Court to award additional attorney's fees for this appeal. Plaintiff filed an answer to the School Board's appeal followed by a supplemental answer. The plaintiff prevailed on none of the issues raised in her answer and supplemental answer, although we affirm the judgment of the hearing officer in favor of the plaintiff. This Court, in the exercise of its discretion, declines to award further attorney fees and penalties to the claimant.[2]

VII. PENALTIES
Ms. Sterling contends that she is entitled to a penalty of 12% of each unpaid installment. The hearing officer awarded her the sum of $2,000. In Verret v. Cajun Travel, Inc., 94-1432, p. 2 (La.App. 3 Cir.1995); 653 *175 So.2d 777, 779, the court discussed the effect of LSA-R.S. 23:1201(E):[3]
LSA-R.S. 23:1201(E) requires that a penalty be assessed for untimely payment of compensation benefits. The amount of this penalty is stipulated as twelve percent of the unpaid or delinquent compensation, or not more than fifty dollars per calendar day for each day benefits remain unpaid, whichever is greater. In addition, the statute limits the calendar day assessment to $2,000.00. There is no such limitation on the 12% assessment. In the present case, the total delinquent and unpaid compensation benefits amounted to $30,916.57. The hearing officer awarded only $2,000.00 in penalties. Twelve percent of the delinquent or unpaid compensation benefits equals $3,709.99. Accordingly the hearing officer erred under the statute in awarding only $2,000.00 in penalties.
Plaintiff submitted a trial memorandum to the hearing officer claiming benefits of $155.31 per week for 50 weeks for a total of $7,765.50 as of April 6, 1995, the date of the memorandum and trial. Twelve percent of that amount is only $931.86. It is apparent that the trial court opted for the $50.00 per day penalty as it is greater than the 12% penalty, subject to a maximum of $2,000.00. It is only where the 12% penalty exceeds the $50.00 per day amount or the $2,000.00 cap that it is applicable.
Therefore, we find no error in the $2000.00 penalty awarded by the hearing officer.

VIII. JUDICIAL INTEREST
Ms. Sterling's answer to the School Board's appeal asserts that the hearing officer improperly assessed interest from date of judgment instead of from the date each payment of benefits, including penalties, was due. We disagree. The determination of the benefits available under the Worker's Compensation Act is governed by the laws in effect at the time of the claimant's injury. Houston v. Kaiser Aluminum and Chemical Corp., 531 So.2d 1129 (La.App. 4 Cir.1988). In Brazley v. Burger King/CIGNA, 613 So.2d 739, 741 (La.App. 4 Cir.), writ denied, 615 So.2d 339 (La.1993) this Court held:
We also reject plaintiff's contention that the lower court should have awarded interest from the date each benefit payment became due, rather than from the date of the judgment. The trial court correctly followed R.S. 23:1201.3, which became effective January 1, 1990 (one year before the accident) and which provides that any compensation awarded shall bear judicial interest from the "date ordered paid by the hearing officer until the date of satisfaction." [Emphasis added.]
Brazley makes sense because the penalties on unpaid benefits are very similar to interest they both impose a cost on the failure to pay promptly. In that sense they are largely redundant. In effect, interest on penalties from date of accrual would be in the nature of interest on interest which is generally disfavored in the law.
Therefore, it was not error for the trial court to assess interest from the date of judgment instead of from the date each payment of benefits, including penalties, was due.

IX. FRIVOLOUS APPEAL
In answering the School Board's appeal, Ms. Sterling contends that the School Board's appeal is frivolous. Although a successful appeal is by definition non-frivolous, the converse is not true because appeals are favored. The arguments made by the School Board are serious and have not been brought in bad faith solely for purposes of harassment or delay, even though those arguments failed to persuade this Court. Therefore, the School Board's appeal is not frivolous.

DECREE
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] At the time of plaintiff's injury in 1990, LSA-R.S. 23:1141 B said "ten thousand dollars" in the two places where it has said "twenty thousand dollars" since it was amended in 1995. The result is the same in this case regardless of which version of the statute is applicable.
[2] Interest awarded on attorney's fees accrues from the date of the judgment. Hall v. McDonald Insulation, 537 So.2d 328 (La.App. 1 Cir.1988); Cf. Brazley v. Burger King/CIGNA, 613 So.2d 739, 741 (La.App. 4 Cir.), writ denied, 615 So.2d 339 (La.1993).
[3] LSA-R.S. 23:1201(E) has been redesignated as LSA-R.S. 23:1201(F) and reworded in ways that are not material to the outcome of this case.